**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

KATHLEEN CHUPLIS,                    :
                                     :
                  Plaintiff,         :
          v.                         :     3:20-CV-1757
                                     :     (JUDGE MARIANI)
STATE FARM FIRE AND                  :
CASUALTY CO.,                        :
                                     :
                  Defendant.         :

**MEMORANDUM OPINION**

**I. INTRODUCTION**

On August, 2020, Plaintiff Kathleen Chuplis filed a Complaint against Defendant

State Farm and Casualty Company in the Court of Common Pleas of Schuylkill County.

(*See* Complaint, Doc. 1-2).  The Complaint alleges breach of contract (Count I) and breach

of duty of good faith and fair dealing in violation of 42 Pa. C.S.A. § 8371 (Count II) in

connection with losses sustained from two furnace malfunction events.  (*Id.*).  Defendant

subsequently removed the action to this Court on the basis of diversity of citizenship.  (*See*

Notice of Removal, Doc. 1).  Presently before the Court is Defendant's Motion to Dismiss

Count II of Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc.

4).  For the reasons that follow, the Court will deny Defendant's Motion.

## II. FACTUAL ALLEGATIONS

Plaintiff's Complaint alleges the following facts which, for the purposes of resolving Defendant's partial Motion to Dismiss, the Court takes as true:

Plaintiff owns real estate located at 382 Malones Road, Ashland, Pennsylvania. (Compl., Doc. 1-2, at ¶ 1).  Plaintiff and Defendant "entered into an insurance contract, commonly referred to as a Homeowner's Insurance Policy, to insure Plaintiff's property at 385 Malones Road, Ashland, PA 17921."  (*Id*. at ¶ 3).  "On or about January 20, 2019," Plaintiff's "furnace malfunctioned, causing what is commonly referred to as a 'puff-back'" loss.  (*Id*. at ¶ 5).

Following the January 2019 furnace malfunction, "[a] claim was promptly submitted to Defendant."  (*Id*. at ¶ 6). In response, Defendant sent an adjuster to Plaintiff's home "approximately one month after the loss had occurred."  (*Id*. at ¶ 15).

In addition to submitting a claim to Defendant, Plaintiff retained Mountain View Restoration, which is "a company that provides restoration and cleaning services in the Commonwealth of Pennsylvania."  (Compl. at ¶ 6).  On March 15, 2019 Mountain View submitted an estimate totaling in $35,569.84, which covered "the damage that resulted when the furnace malfunctioned on or about January 20, 2019."  (*Id*. at ¶¶ 7, 8).

Also in March of 2019, Plaintiff retained the services of Schuylkill Public Adjusting Company, a public adjuster.  (*Id*. at ¶ 9).  Schuylkill Public Adjusting Company "submitted an estimate to Defendant on behalf of Plaintiff in the amount of $39,777.93."  (*Id*.).

"[O]n or about July 9, 2019," before Defendant made payment to Plaintiff on the first loss, Plaintiff suffered a second "puff-back loss" when the same furnace malfunctioned a second time. (Compl. at ¶¶ 10, 11, 24). This loss caused further soot and smoke damage throughout Plaintiff's home. (*Id.* at ¶ 25). Plaintiff "promptly notified" Defendant of the second loss. (*Id.* at ¶ 12). Defendant then "advised Plaintiff and her public adjuster that the second loss would have to be treated as a 'new claim.'" (*Id.*).

"Approximately three days after the second loss," Defendant issued a net payment to Plaintiff of $10,435.74 for the first loss, which was "based upon their own estimate of $14,783.74 less a Deductible of $4,348.00." (*Id.* at ¶¶ 13, 14).

On behalf of Plaintiff, Scott Luscavage of Schuylkill Public Adjusting Company prepared an estimate dated August 7, 2019, for the second loss totaling $39,431.43. (*Id.* at ¶ 21; Compl., Ex. F).

On August 21, 2019, Defendant sent Berks Fire and Water Restoration Inc. to Plaintiff's home to conduct an inspection. (*Id.* at ¶ 17). Brad Roberts, the representative of Berks Fire and Water, "opined that the Property has not been cleaned after the first puff-back" and "emphasized in his report that there was 'heavy nicotine residue' in the home." (*Id.* at ¶ 18). Mr. Roberts found soot in the basement and on the first floor, but he did not find soot on the second floor. (*Id.* at ¶ 19). Mr. Roberts also stated that "he could only detect an odor of 'old cigarette smoke.'" (*Id.*).

On September 5, 2019, the adjuster for Defendant, Ray Moncavage, "sent a letter denying anything for the second loss stating that the dwelling had not been cleaned after the first loss." (Compl. at ¶ 20).  However, Plaintiff alleges that she and her daughter "spent significant time cleaning the soot and smoke from within the home" between the first and second losses.  (*Id.* at ¶ 16).

In response to the denial, Mr. Luscavage "corresponded with the Defendant pointing out that the home was a forced, hot air system and that Defendant agreed to clean the ducts on the second floor, but not the rooms that were contaminated with the soot/smoke." (*Id.* at ¶ 22).

Plaintiff alleges that "[a]t all relevant times hereto, [she] fully cooperated in the investigation and complied with all of her duties under the homeowner's policy."  (*Id.* at ¶ 27).

### III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal,* 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing

5

court to draw on its judicial experience and common sense.'" *Id.* at 786-787 (quoting *Iqbal,*

556 U.S. at 679).

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that amendment
> would be inequitable or futile, the court must inform the plaintiff that he or she
> has leave to amend the complaint within a set period of time.

*Id.*

## IV. ANALYSIS

Plaintiff's Complaint alleges breach of contract (Count I) and breach of duty of good

faith and fair dealing in violation of 42 Pa. C.S.A. § 8371 (Count II) in connection with losses

sustained from the two furnace malfunction events.  (*See* Compl., Doc. 1-2).  In the instant

Motion, Defendant seeks to dismiss only Count II of Plaintiff's Complaint.  (Doc. 4).

The Pennsylvania legislature has created a statutory remedy for an insurer's bad

faith conduct, which reads as follows:

> In an action arising under an insurance policy, if the court finds that the insurer
> has acted in bad faith toward the insured, the court may take all of the following
> actions:
> > (1) Award interest on the amount of the claim from the date the claim
> > was made by the insured in an amount equal to the prime rate of interest
> > plus 3%.
> > (2) Award punitive damages against the insurer.

6

(3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371.

"The standard for bad faith claims under § 8371 is set forth in *Terletsky v. Prudential Property & Cas. Ins. Co.*, 437 Pa. Super. 108, 649 A.2d 680, 688 (1994), *appeal denied*, 540 Pa. 641, 659 A.2d 560 (1995)." *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997). *Terletsky* defined the term "bad faith" as follows:

> In the insurance context, the term bad faith has acquired a particular meaning:
>
>> *Insurance*. "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Terletsky*, 649 A.2d at 688 (quoting Black's Law Dictionary 139 (6th ed. 1990)).  "[T]o recover under a claim of bad faith, the plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Id*.

Here, Defendant argues that Plaintiff's "Complaint entirely fails to allege the two necessary elements of a cause of action for bad faither under 42 Pa.C.S.A. § 8371," as it is "devoid of specific factual allegations to show how Defendant (1) allegedly acted without a reasonable basis, and (2) knew or recklessly disregarded its alleged lack of reasonable basis for its claims handling." (Doc. 5, at 7).  Defendant claims that the Complaint instead

"contains only bare, boilerplate and conclusory allegation, which lack the factual specificity required by Fed.R.Civ.P. 8, <u>Twombly</u>, <u>Iqbal</u>, and their progeny." (*Id.* at 8).

Although Plaintiff's Complaint does contain a number of conclusory allegations, statements of the law, and legal conclusions that are not entitled to the presumption of truth under the governing Rule 12(b)(6) standard, Plaintiff's Complaint nonetheless properly sets forth factual allegations sufficient to state a claim for relief under Pennsylvania's bad faith statute. Although sparse with respect to the bad faith claim, Plaintiff's factual allegations that remain after the Court disregards Plaintiff's conclusory allegations and legal conclusions are enough to barely "nudge[] [the] claim[] across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570.

First, the Complaint alleges that Defendant waited until one month after the first puff-back loss occurred to send an adjuster to Plaintiff's home. (Compl. at ¶ 15). The Complaint also alleges that Defendant did not pay Plaintiff for the first loss until July 12, 2019, which was almost seven months after the first loss occurred. (*Id.* at ¶ 14). "A claim for bad faith may be premised on an insurer's bad faith in investigating a claim, such as by failing to conduct a good faith investigation into the facts or failing to communicate with the claimant." *Shaffer v. State Farm Mut. Auto. Ins. Co.*, 643 F.App'x 201, 204 (3d Cir. 2016). Although delay "on its own [does not] necessarily constitute bad faith", the delay between a demand for benefits and an insurer's determination of whether to pay a claim is a relevant factor in determining whether an insurer has acted in bad faith. *Id.* (citing *Kosierowski v. Allstate Ins.*

*Co.*, 51 F.Supp.2d 583, 589 (E.D. Pa. 1999)).  *See also*, *Polselli v. Nationwide Mut. Fire Ins.*

*Co.*, 23 F.3d 747, 752 (3d Cir. 1994) (in determining whether the insurer has acted in bad

faith, courts may consider the delay by insurer in responding to communications from

insured, its response time in engaging an investigator and in conducting an investigation,

and its handling of settlement negotiations).  Thus, Plaintiff's allegations that Defendant

caused delays in sending an adjuster to Plaintiff's home and in resolving Plaintiff's first claim

supports Plaintiff's claim of bad faith.

Next, the Complaint alleges that in resolving Plaintiff's first claimed loss, Defendant

paid Plaintiff $14,783.74 less a deductible of $4,435.74, leaving a net payment of

$10,435.74.  (*Id*. at ¶ 13).  This payment was based upon Defendant's own estimate, and it

was well below both estimates Plaintiff received from Mountain View Restoration and

Schuylkill Public Adjusting Company, which were $35,569.84 and $39,777.93 respectively.

(*Id*. at ¶¶ 7, 9, 13).  Although bad faith "is not present merely because an insurer makes a

low but reasonable estimate of an insured's damages," the disparity between the defendant

insurer's payment and the plaintiff's estimates is a relevant consideration in bad faith claims.

*Smith v. State Farm*, 506 F.App'x 133, 136 (3d Cir. 2012) (quoting *Johnson v. Progressive*

*Ins. Co.*, 987 A.2d 781, 784 (Pa Super. 2009)); *see also, Meiser v. State Farm Fire and*

*Cas. Co.*, No. 3:17-2366, 2018 WL 4680055, at *3 (M.D. Pa. Sept. 28, 2018) (finding a

complaint sufficient to state a claim for bad faith where the plaintiff alleged "extreme

disparity" between the insurer's estimate of damages and plaintiff's estimate, and further

supported the allegation with exhibits attached to the complaint showing the extent and total amount of damages based on plaintiff's estimates).  Here, Plaintiff adds to her claim of bad faith by alleging a disparity of nearly $25,000 between Defendant's estimate of the damage caused by the first furnace malfunction and two other estimates of damage prepared on her behalf, which she has supported through documents attached to the Complaint.   (*See* Mar. 9, 2019 Estimate by Mountain View Restoration LLC Estimate, Compl. Ex. B; Apr. 25, 2019 Estimate by Schuylkill Public Adjusting Co., Inc., Compl. Ex. C).

The Complaint further alleges that Defendant denied Plaintiff's claim for the second loss, "stating that the dwelling had not been cleaned after the first loss." (*Id*. at ¶ 20). Courts have held that bad faith behavior encompasses an insurer's failure to "properly investigate claims prior to refusing to pay the proceeds of the policy to its insured." *Gold v. State Farm Fire and Cas. Co.*, 880 F.Supp.2d 587, 597 (E.D. Pa. 2012) (quoting *Bombar v. W. Am. Ins. Co.*, 932 A.2d 78, 92 (Pa. Super. 2007)).  As the Third Circuit has explained, "'[b]ad faith is a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured.'" *Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 244 F.App'x 424, 433 (3d Cir. 2007) (quoting *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n. 9 (3d Cir. 1999)).

Here, Defendant summarily denied Plaintiff's second claim based on lack of cleaning after the first loss, despite Plaintiff's claim that she and her daughter "spent significant time cleaning the soot and smoke from within the home" between the first and second losses

(Compl. at ¶ 16), a public adjuster's estimate of damages from the second loss totaling $39,431.43 (*id*. at ¶ 21), and correspondence from the public adjuster to Defendant "pointing out that the home was a forced, hot air system and that Defendant had agreed to clean the ducts on the second floor, but not the rooms that were contaminated with the soot/smoke" (*id*. at ¶ 22).  Drawing all reasonable inferences in favor of Plaintiff, these facts, taken together, support a claim that Defendant failed to perform an adequate investigation into the facts of Plaintiff's claim, leading to an unfounded refusal to pay.  Although discovery in this case may later reveal that Defendant did in fact have a reasonable basis to deny Plaintiff's second claim, the Complaint states the minimum amount of facts necessary to allow Plaintiff's bad faith claim to survive the motion to dismiss.

In sum, Plaintiff's Complaint alleges that Defendant caused delays in resolving Plaintiff's first claim, made a payment on the first claim nearly $25,000 below Plaintiff's two estimates, and summarily denied Plaintiff's second claim due to the alleged lack of cleaning after the first loss.  (*Id*. at ¶¶ 7, 9, 14, 15, 20).  Affording Plaintiff every reasonable inference, these facts, when accepted as true, are sufficient to state a bad faith claim premised on Defendant's failure to adequately investigate Plaintiff's claims.  Though none of these factual allegations alone may be sufficient to state a claim under § 8371, taken together, Plaintiff has successfully, though barely, stated a plausible claim of bad faith.

## V. Conclusion

For the foregoing reasons, the Court will deny Defendant's Motion to Dismiss Count II of Plaintiff's Complaint (Doc. 4).  A separate Order follows.

Robert D. Mariani
United States District Judge